UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KINGSLEY LAJOHN WRIGHT,        )     Case No. CV 12-1728-JEM
                       )
            Petitioner,     )
                       )     MEMORANDUM OPINION AND ORDER
        v.                  )     DENYING PETITION FOR WRIT OF
                       )     HABEAS CORPUS
DIRECTOR OF CORRECTIONS (CA),    )
                       )
           Respondent.    )
_____ )

**PROCEEDINGS**

On February 29, 2012, Kingsley LaJohn Wright ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition"). On May 18, 2012, Petitioner filed a First Amended Petition, adding four claims to the five claims set forth in the Petition.

On June 13, 2012, the Secretary of the California Department of Corrections and Rehabilitation ("Respondent") filed a motion to dismiss the First Amended Petition as unexhausted. On October 12, 2012, the Court denied the motion to dismiss without prejudice and ordered Respondent to file an Answer. On January 11, 2013, Petitioner filed an Answer to the nine claims asserted in the Petition and First Amended Petition. On February 6, 2013, Petitioner filed a Reply.

1    The parties have consented to proceed before the Magistrate Judge.

2                              **BACKGROUND**

3    On October 4, 2010, in the Los Angeles County Superior Court, Petitioner entered a

4    plea of no contest to the following charges: second degree robbery (Cal. Penal Code § 211);

5    grand theft of personal property (Cal. Penal Code § 487(a)); second degree commercial

6    burglary (Cal. Penal Code § 459); and possession of a controlled substance (Cal. Health &

7    Safety Code § 11350(a)).  (Lodgment ["LD"] 1 at 6-7.)  Petitioner admitted that he had

8    sustained prior convictions, two of which constituted "strikes" under the Three Strikes law,

9    and had served prior prison terms (Cal. Penal Code §§ 667(a) & (b)-(i), 667.5(b),

10   1170.12(a)-(d)). The trial court struck one of the "strike" convictions for purposes of

11   sentencing.  (LD 1 at 10-11.)  On October 15, 2010, the trial court sentenced Petitioner to

12   state prison for 17 years and eight months.  (LD 2 at 3-4; LD 3.)

13   Petitioner did not appeal, but filed a petition for a writ of habeas corpus in the

14   California Court of Appeal.[1]  (LD 4.)  On April 28, 2011, the California Court of Appeal

15   denied the petition for failure to state sufficient facts demonstrating entitlement to relief,

16   citing People v. Duvall, 9 Cal. 4th 464, 474-75 (1995), In re Alvernaz, 2 Cal. 4th 929 (1992),

17   and In re Vargas, 83 Cal. App. 4th 1125, 1140-41 (2000)).  (LD 5.)

18   Petitioner filed another petition for a writ of habeas corpus in the California Court of

19   Appeal.  (LD 6.)  On August 18, 2011, the Court of Appeal denied the petition for failure to

20   state sufficient facts demonstrating entitlement to relief and as repetitive of a prior petition,

21   citing People v. Duvall, 9 Cal. 4th 464, 474-75 (1995) and In re Clark, 5 Cal. 4th 750, 769

22   (1993).  (LD 7.)  Petitioner filed a petition for a writ of habeas corpus in the California

23   Supreme Court.  (LD 8-11.)  On February 15, 2012, the California Supreme Court

24   summarily denied the petition.  (LD 12.)

25   

26   ───────────────

     [1]    In his Petition and First Amended Petition, Petitioner asserts that he also raised his claims on
27   direct appeal.  The California appellate courts website, http://appellatecases.courtinfo.gov, contains no
     record of a direct appeal by Petitioner from the judgment of conviction in this case.

28                                    2

## PETITIONER'S CONTENTIONS[2]

1.      The trial court allowed Petitioner to represent himself without signing a waiver, pursuant to <u>Faretta v. California</u>, 422 U.S. 806 (1975), and rushed him into entering a no contest plea.  (Petition at 5; Reply at 3-4.)

2,      The prosecution never gave Petitioner full discovery and withheld exculpatory evidence, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  (Petition at 5; Reply at 4.)

3.      Trial counsel was ineffective, in violation of the Sixth Amendment, because he failed to challenge obvious flaws in the prosecution's case and the prosecution's failure to produce exculpatory evidence.  (Petition at 5-6; Reply at 5.)

4.      Although Petitioner had not signed a <u>Faretta</u> waiver, the trial court relieved the public defender's office and left Petitioner unrepresented for 33 days.  (Petition at 6.)

5.      Petitioner's no contest plea was involuntary because he was dizzy and in pain on account of his HIV infection.  (Petition at 6; Reply at 5-6.)

6.      Petitioner was not arraigned within the period required by statute.  (First Amended Petition at 5.)

7.      The trial court failed to grant trial counsel's request to reduce the robbery charge to grand theft.  (First Amended Petition at 5; Reply at 6.)

8.      Petitioner admitted prior conviction allegations which had incorrect case numbers and dates.  (First Amended Petition at 5-6; Reply at 6-7.)

9.      Petitioner's plea was coerced because the judge, not the prosecutor, made the plea agreement.  (First Amended Petition at 6; Reply at 7.)

---

[2]      Petitioner did not reassert the five claims in his original Petition in his First Amended Petition, but numbered his new claims as Grounds Six through Nine.  Petitioner's failure to include Grounds One through Five in the First Amended Petition violates the Court's order, dated May 9, 2012, granting Petitioner leave to file a First Amended Petition.  Nevertheless, in the interests of justice, the Court has ordered Respondent to address all nine claims on the merits and will consider them here.

3

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as amended by AEDPA, states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim – (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light
> of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court held that a state court's decision can be contrary to federal law if it either (1) fails to apply the correct controlling authority, or (2) applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  <u>Id.</u> at 405-06.  A state court's decision can involve an unreasonable application of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  <u>Id.</u> at 407-08.  The Supreme Court has admonished courts against equating the term "unreasonable application" with "clear error."  "These two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  Instead, in this context, habeas relief may issue only if the state court's application of federal law was "objectively unreasonable."  <u>Id.</u>  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

4

1  disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S.

2  __, __, 131 S. Ct. 770, 786 (2011).

3         Under AEDPA, the "clearly established Federal law" that controls federal habeas

4  review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court

5  decisions "as of the time of the relevant state-court decision." Williams, 529 U.S. at 412 ("§

6  2254(d)(I) restricts the source of clearly established law to this Court's jurisprudence"); see

7  also Andrade, 538 U.S. at 71.  If there is no Supreme Court precedent that controls a legal

8  issue raised by a habeas petitioner in state court, the state court's decision cannot be

9  contrary to, or an unreasonable application of, clearly established federal law. Wright v. Van

10 Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey v. Musladin, 549 U.S. 70,

11 76-77 (2006).  A state court need not cite or even be aware of the controlling Supreme

12 Court cases, "so long as neither the reasoning nor the result of the state-court decision

13 contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); see also Bell v. Cone,

14 543 U.S. 447, 455 (2005) (per curiam).

15        A state court's silent denial of federal claims constitutes a denial "on the merits" for

16 purposes of federal habeas review, and the AEDPA deferential standard of review applies.

17 Richter, 131 S. Ct. at 784-85.  Under the "look through" doctrine, federal habeas courts look

18 through a state court's silent decision to the last reasoned decision of a state court, and

19 apply the AEDPA standard to that decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803

20 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later

21 unexplained orders upholding the judgment or rejecting the same claim rest upon the same

22 ground.").  The AEDPA standard applies, however, even if no state court issued a decision

23 explaining the reasons for its denial of the federal claim.  Richter, 131 S. Ct. at 784–85.

24        The AEDPA standard does not apply when the state high court rejected a federal

25 claim on procedural grounds and did not reach its merits.  Richter, 131 S. Ct. at 784–85.  In

26 that case, the federal habeas court must review the claim de novo rather than under

27 AEDPA's deferential standard.  Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir.2005)

28 (applying de novo standard of review to a claim in a habeas petition that was not

1  adjudicated on the merits by the state court); Lewis v. Mayle, 391 F.3d 989, 996 (9th

2  Cir.2004) (same).

3         Here, the California Court of Appeal denied Petitioner's claims for procedural reasons

4  and the California Supreme Court denied them summarily.  (LD 5, 7, 12.)  As to those of

5  Petitioner's claims presented to both the Court of Appeal and the California Supreme Court,

6  the Court looks through the California Supreme Court's summary denial to the Court of

7  Appeal's procedural denial, and reviews the claims de novo.  See Ylst, 501 U.S. at 803 (if an

8  earlier decision imposing a procedural bar is followed by a silent denial, the reviewing court

9  presumes that the "later decision rejecting the claim did not silently disregard that bar and

10 consider the merits"); Chaker, 428 F.3d at 1221 (claims denied on procedural grounds are

11 reviewed de novo).

12        However, given Petitioner's piecemeal and confusing presentation of his claims to the

13 California Supreme Court, some of his claims may be unexhausted.  A habeas court may

14 deny an unexhausted claim on the merits "when it is perfectly clear that the applicant does

15 not raise even a colorable federal claim."  Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir.

16 2005); see also 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be

17 denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in

18 the courts of the State").  Since an unexhausted claim has not been "adjudicated on the

19 merits" within the meaning of 28 U.S.C. § 2254(d), the Court must make this determination

20 after a de novo review.

21        Moreover, the Supreme Court has instructed habeas courts to engage in de novo

22 review when, as is the case here, the appropriate standard of review is uncertain but the

23 lack of merit under a de novo standard is clear.  See Berghuis v. Thompkins, 560 U.S. 370,

24 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de

25 novo review when it is unclear whether AEDPA deference applies, because a habeas

26 petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de

27 novo review. . . .").

28        Accordingly, the Court will review all of Petitioner's claims de novo.

**DISCUSSION**

I.   **GROUND ONE IN PART AND GROUNDS THREE, FOUR, SIX, AND SEVEN IN**
     **THEIR ENTIRETY ARE BARRED BY PETITIONER'S NO CONTEST PLEA.**

        "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Aside from a challenge to the voluntary and intelligent character of the plea itself, the entry of a guilty plea generally forecloses all collateral attacks on pre-plea constitutional errors.  Id.  The Supreme Court has carved out a narrow exception for jurisdictional defects, see United States v. Johnston, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999), but that exception has no bearing on this case.

        In California, the legal effect of a plea of no contest to a felony charge is considered the same as that of a guilty plea.  Cal. Penal Code § 1016(3).  Thus, except for those claims that are directed at the validity of Petitioner's no contest plea, his federal habeas claims are barred by Tollett.

        The Court finds that the following claims are foreclosed by Petitioner's no contest plea: a portion of Ground One (Petitioner was allowed to represent himself without signing a Faretta waiver); Ground Three (trial counsel was ineffective because he failed to challenge flaws in the prosecution's case and the prosecution's withholding of evidence); Ground Four (Petitioner was unrepresented for 33 days); Ground Six (Petitioner was not arraigned within the time period required by statute); and Ground Seven (the trial court refused trial counsel's request to reduce the robbery charge to grand theft).

        Petitioner's Faretta claim in Ground One is related to Ground Four, in which he complains that he was unrepresented for 33 days.  According to the minutes of court proceedings attached to the Petition, on February 26, 2010, at a pre-trial hearing at which Petitioner appeared without counsel, the trial court denied Petitioner's request to substitute counsel, granted his request to represent himself, and relieved the Public Defender's Office.  (Petition, Exh. C.)  At some point while Petitioner was representing himself, the trial court

appointed standby counsel.  (Id.)  In Ground One, Petitioner complains that he was allowed

to represent himself without having received proper advisements or made a Faretta waiver,

while in Ground Four he complains that 33 days elapsed before the trial court appointed

standby counsel.  (Petition at 5, 6.)  However, Petitioner was no longer representing himself

at the time of his no contest plea.  Standby counsel was appointed to represent him

sometime between June 18, 2010 and August 5, 2010, and Petitioner was represented by

counsel for at least two months before his October 4, 2010 plea hearing.  Thus, any

constitutional violations in connection with Petitioner's self-representation had nothing to do

with the validity of his no contest plea, and any claims based on such violations are barred

by Tollett.  See United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam) (guilty

plea precluded claim for denial of counsel at in camera hearing).

With respect to Ground Three, Petitioner's no contest plea bars ineffective assistance

claims other than a claim that he received constitutionally deficient advice from counsel

regarding the plea.  See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett, 411 U.S. at 266-

67.  Petitioner's ineffective assistance claims in Ground Three are unrelated to counsel's

plea advice and are barred by Tollett.  See Nigro v. Evans, 399 Fed. Appx. 279, 280 (9th

Cir., Oct. 12, 2010) (stating that petitioner's nolo contendere plea "forecloses his claim of

pre-plea ineffective assistance of counsel, which is unrelated to the plea itself"), cert. denied,

__ U.S. __, 131 S. Ct. 1049 (2011); Bohn, 956 F.2d at 209 (guilty plea barred ineffective

assistance of counsel claim regarding pre-plea hearing).

Petitioner's claims challenging his allegedly late arraignment (Ground Six) and the

trial court's refusal to reduce the robbery charge to grand theft (Ground Seven)[3] plainly

pertain to pre-plea matters that in no way implicate the validity of his plea.  See Woods v.

---

[3]    The Court also notes that the letter adduced by Petitioner in support of Ground Seven is from defense counsel to the *prosecutor*.  In the letter, trial counsel states that Petitioner would be willing to plead guilty to grand theft.  (See First Amended Petition, Exhs. [letter from Jose Jonlon to Stephanie Mire, dated July 9, 2009].)  The minutes of proceedings on July 9, 2009 state that: "The Court strongly urges the People to consider the defense's plea proposal."  (Petition, Exh. A.)  Thus, Petitioner's contention that trial counsel unsuccessfully asked the trial court to reduce the charge to grand theft may rest on a misapprehension of the facts.  In any event, the claim is barred by Tollett.

Wong, 2011 WL 6213226, *4-5 (S.D. Cal., Dec. 14, 2011), adopted by, 2011 WL 6213226
(S.D. Cal., Dec. 14, 2011) (delayed arraignment claim barred by guilty plea and in any event
not cognizable on federal habeas ).

Accordingly, Grounds Three, Four, Six, Seven and the Faretta portion of Ground One
are barred by Tollett, and do not warrant federal habeas relief.

## II.   GROUND ONE IN PART AND GROUNDS FIVE AND NINE IN THEIR ENTIRETY
## DO NOT WARRANT FEDERAL HABEAS RELIEF.

In the portion of Ground One that is not barred by Tollett, Petitioner contends that the
trial court repeatedly "rushed" him into resolving the case by plea. (Petition at 5.) In Ground
Five, Petitioner contends that his no contest plea was involuntary because at the time of his
criminal proceedings he had high viral load due to his HIV, and he was dizzy and in pain at
the hearing. (Id. at 6.) In Ground Nine, Petitioner contends that his no contest plea was
coerced because the plea agreement was "made" by the trial court rather than by the district
attorney. (First Amended Petition at 5.)

Due process requires that a guilty plea must be knowing and voluntary. Parke v.
Raley, 506 U.S. 20, 28 (1992); Boykin v. Alabama, 395 U.S. 238, 242–43 & n.5 (1969). "The
longstanding test for determining the validity of a guilty plea is 'whether the plea represents
a voluntary and intelligent choice among the alternative courses of action open to the
defendant.'" Hill, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).
A guilty plea will be upheld if the circumstances demonstrate that the defendant understood
the nature and consequences of the charges and voluntarily chose to plead guilty. Boykin,
395 U.S. at 242–44; see also Brady v. United States, 397 U.S. 742, 747 & n.4 (1970). A
guilty plea is coerced when the defendant is induced to plead by promises or threats which
deprive the plea of the nature of a voluntary act. Doe v. Woodford, 508 F.3d 563, 570
(2007); Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986). To determine the voluntariness of
the plea, the reviewing court looks to "the totality of the circumstances, examining both the
defendant's 'subjective state of mind' and the 'constitutional acceptability of the external

9

1   forces inducing the guilty plea.'" Doe, 508 F.2d at 569 (internal quotes to Iaea, 800 F.2d at
2   866).
3        With respect to Petitioner's contention that the court "rushed" him into the no contest
4   plea, Petitioner points to no evidence indicating that he was "rushed."  The minutes of the
5   court proceedings attached to the Petition indicate that the parties were discussing a
6   possible disposition as early as April 1, 2009.  (Petition, Exh. A.)  Petitioner entered his no
7   contest plea on October 4, 2010, more than a year later.  (LD 1.)
8        Petitioner also contends that the trial court coerced him to plead no contest by having
9   him return to court "every other day," which was tiring for him given his physical condition at
10  the time.  (Petition at 5.)  Petitioner has attached to his Petition copies of the minutes of the
11  court proceedings, showing that he was present in court or in lockup at pretrial conferences
12  held on August 5, 11, and 13, 2010.  He maintains that he agreed to plead no contest in
13  order to stop having to come to court.  Whether or not that was Petitioner's motivation, he
14  has not shown that the trial court scheduled pretrial hearings -- a routine and unremarkable
15  part of pretrial proceedings –  with the purpose of wearing him down so that he would forego
16  trial.
17       Moreover, at the outset of the plea hearing Petitioner affirmed that he was going to
18  plead no contest "in an effort to take the court's indicated offer." (LD 1 at 2.)  The
19  prosecutor then advised him of his right to a jury trial (or a court trial if he preferred), his right
20  to confront and cross-examine witnesses against him and to subpoena witnesses on his
21  own behalf, and his right to remain silent.  (Id. at 2-4.)  Petitioner expressly stated that he
22  understood each right, and that he understood that these rights also applied to the prior
23  conviction allegations.  (Id. at 2-4, 6.)  The prosecutor further advised Petitioner that: he
24  would be sentenced to prison; after his release he would be placed on parole and could be
25  sent back to prison for a parole violation; he was subject to additional time in custody if he
26  was currently on probation; if not a citizen, his plea would result in deportation; he might be
27  subject to a fine in addition to a prison sentence; as a result of the plea, he could not legally
28  possess or use firearms; and he was pleading no contest to another "strike" conviction

1   which would enhance a future sentence if he was convicted again.  (Id. at 4-5.)  Petitioner

2   indicated that he understood.  (Id.)  He affirmed that: he was pleading no contest because

3   he felt it was in his best interests to do so; nobody had threatened him or anyone close to

4   him; and nobody had made any promises to him in order to get him to plead no contest.  (Id.

5   at 5-6.)  He then pleaded no contest to the charges and admitted his prior convictions.  (Id.

6   at 7-8.)

7        While "the barrier of the plea or sentencing proceeding record, although imposing, is

8   not invariably insurmountable," a petitioner seeking to repudiate his statements made at a

9   plea hearing faces a heavy burden.  Blackledge v. Allison, 431 U.S. 63, 73-75 (1977).

10  "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as

11  well as any findings made by the judge accepting the plea, constitute a formidable barrier in

12  any subsequent collateral proceedings.  Solemn declarations in open court carry a strong

13  presumption of verity."  Id. at 73-74.  Given his representations at the plea hearing,

14  Petitioner fails to demonstrate that he was in any way pressured into entering a plea.

15       The transcript of the plea hearing also belies Petitioner's assertion that he was "too

16  sick to know what [he] was doing."  (Petition, Attach. at 3.)  The record does not show any

17  mental confusion or lack of understanding on Petitioner's part.  On the contrary, Petitioner

18  responded directly and appropriately to the prosecutor's questions and clearly indicated his

19  understanding of the rights he was giving up and his desire to plead no contest.  (LD 1 at 2-

20  8.)  Although Petitioner contends that he would not have knowingly pleaded no contest to

21  robbery because he believed he was only guilty of grand theft, he responded "No contest"

22  when the prosecutor asked him how he pleaded to the charge of "felony second degree

23  robbery."  (Id. at 6.)  At the conclusion of the hearing, when the trial court cautioned

24  Petitioner that the "strike" prior conviction it had dismissed for purposes of sentencing would

25  remain for purposes of any subsequent convictions, Petitioner assured the trial court that he

26  did not plan to engage in any more criminal activity, saying, "You don't have to worry about

27  that.  I don't think I'll be coming back to this courtroom other than to say "Hi" and "Bye."  So

28  thank you very much."  (LD 1 at 12.)  Petitioner's conduct at the plea hearing does not bear

11

1    out his description of his mental state.  Rather, it constitutes strong evidence that he

2    understood the proceedings and voluntarily and knowingly pleaded "no contest" to the

3    charges against him.[4]

4          Finally, Petitioner complains that the plea agreement was made by the court rather

5    than by the prosecution.  (First Amended Petition at 6; Reply at 7.)  This claim is without

6    merit.  First, Petitioner does not specify the nature of the trial court's involvement in the plea

7    discussions.  Conclusory allegations without factual support do not warrant federal habeas

8    relief.  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Second, there is no authority that a

9    judge's participation in plea bargaining violates the federal Constitution.  The United States

10   Supreme Court has declared that Fed. R. Crim. P. 11(c)(1), which prohibits federal judges

11   from participating in plea negotiations, was adopted as a prophylactic measure, "not one

12   impelled by the Due Process Clause or any other constitutional requirement."  United States

13   v. Davila, __ U.S. __, __, 133 S. Ct. 2139, 2149 (2013); see also Bivens v. Poole, 302 Fed.

14   Appx. 598, 599 (9th Cir., Dec. 2, 2008) (("[T]here is no clearly established federal law, as

15   determined by the Supreme Court of the United States, prohibiting a state court's

16   participation in plea negotiations.").  As previously discussed, Petitioner has not shown that

17   his plea was coerced.  See Miles v. Dorsey, 61 F.3d 1459, 1467 (10th Cir. 1995) (judge's

18   participation in plea bargaining did not violate federal Constitution where plea was not

19   coerced).

20         Accordingly, the record shows that Petitioner made his plea voluntarily and

21   intelligently, and does not disclose any coercion by the trial court or bad advice by trial

22

23

_____

24         [4]    See Agtas v. Whitley, 836 F.2d 1233, 1235 (9th Cir. 1998) (per curiam) (rejecting claim that
     petitioner's use of tranquilizers made his plea involuntary where his allegations were not supported by
25   the record); Oyague v. Artuz, 393 F.3d 99, 102, 106 (2d Cir. 2004) (in spite of petitioner's statements
     during plea hearing that he was taking Zoloft, was "not well," and "just had a dizzy spell," the Second
26   Circuit rejected petitioner's claim that he lacked sufficient mental acuity to enter a voluntary plea
     because it was contrary to his "express representations during the plea"); Lischefski v. Scribner, 2011
27   WL 4527810, *7-8 (C.D. Cal., Aug. 2, 2011), adopted by, 2011 WL 4527801 (C.D. Cal., Sept. 29, 2011)
     (petitioner's no contest plea was not involuntary on account of misprescribed medication when his
28   statements during hearing showed that he was able to understand proceedings).

1  counsel.  The "coerced plea" portion of Ground One and Grounds Five and Nine do not

2  warrant federal habeas relief.

3  **III.    GROUND TWO DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

4        In Ground Two, Petitioner contends that the prosecution failed to provide him with

5  discovery and withheld exculpatory evidence, in violation of Brady v. Maryland, *supra*.[5]

6  (Petition at 5; Reply at 4-5.)

7        As an initial matter, Ground Two is cognizable in this proceeding only to the extent

8  Petitioner asserts a Brady claim.  There is no general constitutional right to discovery in a

9  criminal case, see United States v. Ruiz, 536 U.S 622, 629 (2002); Weatherford v. Bursey,

10  429 U.S. 545, 559 (1977), and the prosecution's failure to comply with discovery obligations

11  under California law does not provide a basis for federal habeas relief.  See Estelle v.

12  McGuire, 502 U.S. 62, 67-68 (1991).

13        The question then is whether Petitioner's Brady claim is barred by Tollett.  The Ninth

14  Circuit has held that notwithstanding Tollett's bar on pre-plea constitutional violations, a

15  defendant challenging the voluntariness of a guilty plea may assert a Brady claim. Sanchez

16  v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995).  The defendant can argue that his

17  guilty plea was not voluntary and intelligent because it was made in the absence of withheld

18  Brady material.  Id.; see also Smith v. Baldwin, 510 F.3d 1137, 1148 (9th Cir. 2007)

19  (allowing petitioner to proceed on Brady claim despite guilty plea).

20        Here, Petitioner does not argue that the absence of the undisclosed information

21  affected his decision to plead no contest; as is discussed in Section II, his challenge to the

22  voluntariness of his no contest plea is made on other grounds altogether.  Nevertheless,

23  given Petitioner's pro se status,  the Court will give him the benefit of the doubt and will

24  liberally construe his Brady claim so that it falls under Sanchez and Smith.

25

26

_____

27        [5]    Since the Court is reviewing this claim de novo, it need not consider whether there is clearly
established Supreme Court precedent that Brady requires disclosure of exculpatory evidence prior to
a guilty plea, an issue regarding which the circuits disagree.  As discussed below, the Ninth Circuit has
28  held that a defendant challenging the voluntariness of his guilty plea may assert a Brady claim.

1    Under Brady, the prosecution violates due process by withholding evidence that is

2    material and favorable to the accused.  Brady, 373 U.S. at 87-88.  Evidence is material

3    under Brady if there is a "reasonable probability that, had the evidence been disclosed to the

4    defense, the result of the proceeding would have been different."  Kyles v. Whitley, 514 U.S.

5    419, 433-34 (1995) (internal quotation marks and citation omitted).  When the accused

6    enters a plea rather than proceeding to trial, materiality is determined by "whether there is a

7    reasonable probability that but for the failure to disclose the *Brady* material, the defendant

8    would have refused to plead and would have gone to trial."  Smith, 510 F.3d at 1148

9    (quoting Sanchez, 50 F.3d at 1454).  In general, Brady requires disclosure of both

10   exculpatory and impeachment evidence; however, the Supreme Court has held that in the

11   plea context, Brady does not require disclosure of impeachment information prior to the

12   taking of a defendant's guilty plea.  Ruiz, 536 U.S. at 629.

13   Here, even construing Petitioner's Brady claim as a challenge to the voluntariness of

14   his guilty plea, he has not shown the elements of a Brady violation.  While the precise nature

15   of the allegedly withheld evidence is unclear, apparently it would have documented that the

16   police returned the bracelet stolen by Petitioner from a jewelry store without first

17   photographing it or logging it in, and only later returned to the store to photograph it for the

18   record. (Petition at 5, Attach. at 2-3.)  Petitioner, however, was aware of this information,

19   which he says came out during the preliminary hearing.  Moreover, Petitioner has not shown

20   that the information was material or even particularly exculpatory.  Even if there was a break

21   in the chain of custody of the bracelet recovered from Petitioner when he was arrested, the

22   evidence would not have shown that he did not take it from the store, or did not use force

23   against the victim.  Thus, Petitioner has not shown that "but for the failure to disclose the

24   Brady material, [he] would have refused to plead and would have gone to trial."  Smith, 510

25   F.3d at 1148.

26   Accordingly, Ground Two does not warrant federal habeas relief.

27

28

**IV.  GROUND EIGHT DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

In Ground Eight, Petitioner contends that two of the prior conviction allegations admitted by him had wrong dates or numbers.  (First Amended Petition at 6, Ex. C; Reply at 9-10.)  Petitioner has submitted abstracts of judgment, which show that he was convicted of violations of Cal. Penal Code § 459 in Case No. GA008384 on August 22, 1991 and in Case No. FWV02700 on December 22, 1993.  (First Amended Petition, Ex. C.)  At the plea hearing, the prosecutor taking the plea asked Petitioner whether he admitted that he was convicted of violations of Cal. Penal Code § 459 in Case No. GA008384 on September 20, 1991 and in case No. FWV0270 on June 24, 1994.  (LD 1 at 1.)  Thus, the dates of conviction recited by the prosecutor were wrong.[6]  The June 24, 1994 date recited for Case FW02700 was the sentencing date rather than the conviction date, while the September 20, 1991 date recited for Case No. GA008384 was simply erroneous -- Petitioner was convicted on August 22, 1991 and sentenced on September 12, 1991.  (First Amended Petition, Exh. C.)

Petitioner, however, does not contend that he did not sustain these prior convictions, or that he was somehow misled by the erroneous dates into admitting prior convictions he did not sustain.  See Ex parte Willton, 120 Cal. App. 2d 608, 609-10 (1953) (no prejudice from erroneous date of prior conviction in information when defendant admitted prior conviction and did not claim to have been misled).  He has not shown that because of the erroneous conviction dates, his admissions of these prior convictions were not knowingly and intelligently made.  Nor has he shown  a constitutional violation under any other theory.  Ground Nine, therefore, does not warrant federal habeas relief.

**V.  PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING.**

Petitioner seeks an evidentiary hearing.  (Petition, Attach. at 4.)  An evidentiary hearing is not warranted where, as here, "the record refutes the applicant's factual

---

[6]    As for the allegedly wrong case number, possibly Petitioner is referring to the prosecutor's omission of the final zero in Case No. FWV02700, a trivial error.

allegations or otherwise precludes habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474

(2007).  Accordingly, Petitioner's request for an evidentiary hearing is denied.

**ORDER**

Petitioner is not entitled to relief on the claims in his Petition and First Amended

Petition.

Accordingly, IT IS HEREBY ORDERED that the Petition and First Amended Petition

are denied, and Judgment shall be entered dismissing this action with prejudice.

DATED: <u>December 6, 2013</u>                      <u>      /s/John E. McDermott      </u>
                                                                          JOHN E. MCDERMOTT
                                                        UNITED STATES MAGISTRATE JUDGE